**Dr. Mark CANNON, M.D., Respondent,**

v.

**Marilyn MULLER, Appellant.**

**No. WD 38372.**

Missouri Court of Appeals,
Western District.

Feb. 10, 1987.

C. William Kramer, Independence, for appellant.

John D. Williams, Gary Owens, Office of the County Counselor, Kansas City, for respondent.

Before KENNEDY, P.J., and
LOWENSTEIN and GAITAN, JJ.

GAITAN, Judge.

Appellant, Marilyn Muller, appeals the judgment of the trial court in favor of respondent, Mark Cannon, M.D., which appointed her father, Cleo Muller, as guardian and conservator of her estate. Appellant alleges trial court erred by (1) failing to impanel a jury to try the issues presented in respondent's amended petition, or, alternatively, ascertaining a waiver from appellant in violation of § 475.075 RSMo 1986 and (2) entering its finding, without sufficient evidence, that appellant was incapacitated and disabled pursuant to § 475.-010 RSMo 1986. The judgment of the trial court is affirmed.

On December 27, 1985, respondent filed his Petition for Temporary Detention of appellant, and the court ordered temporary emergency detention of appellant in the Western Missouri Mental Health Center. Respondent also filed his Petition and Amended Petition for Appointment of Guardian and Conservator on December 27, 1985 and April 8, 1986, respectively. The petition expressed concern that appellant, who was seven and one-half months pregnant, presented a likelihood of serious physical harm to herself due to her apparent inability to provide adequate nutrition and housing for herself during the term of pregnancy. This combined with her diagnosis of paranoid schizophrenia. Notices were timely sent to appellant as well as all interested persons setting forth the rights stated in § 475.075 RSMo 1986. On April 16, 1986, the court took up this matter for hearing.

At the hearing, the court heard evidence from Mr. Muller that in his opinion, appellant needed a guardian and conservator because of her constant threat of suicide and her failure to take her prescribed medication. Mr. Muller testified that appellant had graduated from college approximately

seven years ago, had graduated summa cum laude and has an IQ of a genius. However, the first year after graduation she began having problems. He further testified that appellant had been employed recently with R.L. Polk, but had been relieved from her duties because she could not follow its safety regulations. He stated that in his opinion appellant was unable to take care of herself or of her financial affairs.

The court then heard testimony from Dr. Arun Jethanandani, a second year resident at Western Missouri Mental Health Center, who was appellant's acting primary therapist. She testified that appellant was diagnosed as a schizophrenic, chronic paranoid and showed signs of borderline personality disorder. Dr. Jethanandani further stated that appellant refused to take her medication and that in her opinion, appellant would not take her medication on her own.

Appellant took the stand on her behalf and testified that if she were released from the hospital and that if a physician suggested she needed medical treatment, she could follow the physician's instructions. She stated that she planned on living in her old apartment and that she was going to apply for general relief as a means to support herself. She also testified that she had a college degree and felt certain she could find appropriate employment to support herself. Ms. Muller assured the court that if she were on her own, she could take control of her life.

There was an adjudication that appellant was totally incapacitated and was totally disabled, and that appellant would remain in a mental health facility until released by the facility or until further order of the Court. Appellant's father, a lawyer, was appointed her guardian as well as conservator of appellant's estate.

## I.

We now turn to consideration of appellant's first point that the trial court erred in its application of § 475.075, RSMo 1986. Appellant asserts that she has a right to a jury trial and that she must affirmatively, intelligently and knowingly waive that right on the record.

Section 475.075.8, RSMo 1986, provides that:

The respondent shall have the following rights in addition to those elsewhere specified:

(1) The right to be represented by an attorney;

(2) *The right to have a jury trial;*

(3) The right to present evidence on his behalf;

(4) The right to cross-examine witnesses who testified against him;

(5) The right to be silent;

(6) The right to have the hearing opened or closed to the public as he elects;

(7) The right to a hearing conducted in accordance with the rules of evidence in civil proceedings, except as modified by this Chapter; and

(8) The right to be present at the hearing.

[Emphasis added]

In the recent case of *In Re Link*, 713 S.W.2d 487 (Mo. banc 1986), the Supreme Court of Missouri reviewed on appeal for the first time the meaning of this statute. In that case Ms. Link alleged that the lower court erred by failing to follow § 475.075. She argued, among other things, that the trial court committed error when it did not afford her a jury trial or, in the alternative, when it failed to ascertain whether she desired to waive her right to a jury trial in a manner consistent with Criminal Rule 27.01. *Link*, 713 S.W.2d at 491.

The Supreme Court reviewed the provisions of § 475.075 as it existed prior to being amended in 1983.[1] The applicable provision of § 475.075 RSMo 1978 (repealed) was as follows:

475.075. Hearing on incompetency-notice-service-appointment of attorney.—1. When a petition for the appointment of a

1. The statute has remained unchanged since the 1983 amendment.

guardian for an alleged incompetent is filed, the court, if satisfied that there is good cause for the exercise of its jurisdiction, shall order that the facts be inquired into by a jury, *except that if neither petitioner nor the alleged incompetent demands a jury, the facts may be inquired into by the court.*

[Emphasis added]

The court noted that under this statute failure to demand a jury trial in a competency proceeding or failure to object to the proceedings as held, constituted a waiver of the right to trial by jury. *Link*, 713 S.W.2d at 492, *citing, In Re Moynihan*, 332 Mo. 1022, 62 S.W.2d 410 (1933).

The court then proceeded to discuss the legislative intent behind the enactment in 1983 of the new statute. The court stated that it believed that the language chosen by the legislators in its 1983 amendment to § 475.075, reflects a legislative intent to provide *greater* protection for the rights of allegedly incapacitated persons than previously existed under Missouri law. *Link*, 713 S.W.2d at 494.

The court noted, however, that the legislators did not intend that the rights enumerated under § 475.075 could not be waived. *Link*, at 494. In fact, the court noted that the right to a jury trial granted by § 475.075.8(2) could be waived in a manner consistent with the requirements of the statute and of waiver generally, provided appropriate precautions were taken. *Id.* at 495. The court stated unequivocally that the individual's interests at stake in a competency proceeding are so great that § 475.075.8 and the constitution require that the right to a jury trial be waived affirmatively, on the record, in a fashion similar to waiver under Criminal Rule 27.-01.

 However, *Link* was decided after the case in chief, and, its application is not retroactive. *In re Weissinger*, 720 S.W.2d 430 (Mo.App.1986); *see Sumners v. Sumners*, 701 S.W.2d 720, 723 (Mo. banc 1985). In *In Re Weissinger* the Eastern District

held that "We believe the rule announced in *Link* was procedural and prospective only...." We agree.

While it seems that the legislature had an intention to change the law when it amended § 475.075 in 1983, its intentions are unclear. Prior to the amendment and up to the decision in *Link*, the provisions for waiver of a jury trial had been considered to be that applied in civil cases. The principle authority for that position was *In re Moynihan*, 332 Mo. 1022, 62 S.W.2d 410, 418 (1933), where the Court held that failure to demand a jury trial constituted a waiver of the right to a jury trial. The 1983 amendments did not discuss waiver of the right to jury trial. Because there was no statutory guidance, the trial court did not err by following the directives of *In re Moynihan*.

The *Link* decision is a dramatic break with prior law (application of civil procedure) regarding hearings to determine incompetency for the purpose of appointment of guardians. *Link* is the first court interpretation of the 1983 amendment to § 475.-075.8, and requires a criminal standard for waiver of a jury trial. Waiver of a jury trial is not substantive rather it is procedural. *See McKeiver v. Pennsylvania*, 403 U.S. 528, 91 S.Ct. 1976, 1985, 29 L.Ed.2d 647 (1971). Procedural changes are given prospective effect only. *State v. Shafer*, 609 S.W.2d 153, 157 (Mo. banc 1980). Appellant's argument on this point fails.

## II.

Appellant's second point that the trial court lacked sufficient evidence to support its finding of incapacity and disability under § 475.010 RSMo 1986 is without merit.

Under RSMo § 475.010(8), an "incapacitated person" is:

one who is unable by reason of any physical or mental condition to receive and evaluate information or to communicate decisions to such an extent that he lacks capacity to meet essential requirements for food, clothing, shelter, safety or oth-

er care such that serious physical injury, illness, or disease is likely to occur.

■ Similarly, under RSMo § 475.-010(4)(a), a "disabled person" is one who is:

unable by reason of any physical or mental condition to receive and evaluate information or to communicate decisions to such an extent that the person lacks ability to manage his financial resources.

The facts before the trial court were sufficient to meet the statutory requirements. The evidence established the following: That appellant made constant threats to commit suicide. During her hearing she testified regarding these attempts:

"I could say right now that I'm not going to do that", to "If I can get out of Western Missouri by making up my mind not to commit suicide, I'll do that", to "I feel like committing suicide, but I don't think I'm going to", to finally, "When I tried to cut my wrist, I didn't have the guts to cut deep enough. I probably could have done it."

In addition, she failed to properly clothe and shelter herself as well as show the ability to handle her finances.

Further, there was testimony from Dr. Jethanandani establishing that the appellant suffers from chronic paranoid schizophrenia, has very prominent traits of another mental illness (borderline personality disorder), has a poor history of compliance with medication, has feelings of hopelessness and depression, and is indecisive about future plans. Dr. Jethanandani recommended future treatment at Western Missouri—a prospect firmly rejected by the appellant during her testimony—and supported the appointment of Cleo Muller as guardian and conservator.

There was ample testimony before the trial court to provide clear and convincing evidence of the appellant's incapacity and disability. The trial court's decision is supported by substantial evidence, is in accord with the weight of evidence, and accurately declares and applies the law set forth in RSMo chapter 475. *See Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).

The judgment of the trial court is affirmed.

All concur.