In the Matter of Maude M. SLATER, Guardianship, Appellant,

v.

Donald SLATER, Respondent.

No. WD 39258.

Missouri Court of Appeals, Western District.

Jan. 26, 1988.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 1, 1988.

Application to Transfer Denied April 19, 1988.

Joseph Y. DeCuyper, Kansas City, D. Bryant King, III, Jefferson City, for appellant.

Allan D. Seidel, Trenton, for respondent.

Before PRITCHARD, P.J., and GAITAN and COVINGTON, JJ.

GAITAN, Judge.

Appellant, Maude M. Slater, appeals the appointment of a guardianship of her person and conservator of her estate. The respondent is her only son, Donald Slater. After a hearing, the trial court appointed the public administrator as guardian. Appellant alleges that the trial court erred in the following respects: (1) by waiving the physician-patient privilege and permitting the testimony of her physician; (2) that there was a failure of proof of partial or complete incapacity or disability; (3) by failing to make findings of facts as required by § 475.075.9; and (4) by not applying the least restrictive environment principle relative to the management of her financial resources per § 475.075.10.

Hearing was conducted before the Associate Division of the Grundy County Circuit Court—Probate Division on February 18, 1987, upon the petition filed by Maude M. Slater's son, Donald Slater, requesting the appointment of a guardian and conservator. The petition had been filed on January 7, 1987, alleging that, because of the condition of senility, Maude M. Slater, age 85, lacked the ability to manage her financial resources and to meet her essential requirements for food, clothing, shelter, safety and other care such that serious physical injury, illness or disease was likely to occur, and requested the appointment of Donald Slater as her guardian and conservator so that her physical needs would be seen to, as well as the preservation of her financial resources and management of her business affairs.

Testimony presented at the hearing first came from Dr. Albert D. Cross, M.D. He testified that he has been Maude Slater's physician for over twenty (20) years and that he had last seen Mrs. Slater on December 28th, 1986, only ten (10) days prior to the petition being filed. At that time, Mrs. Slater appeared to be hallucinating that people had been in her home. Dr. Cross testified that this had been a re-occurring problem with Mrs. Slater and attributed the cause to hardening of the arteries or senile dementia. Dr. Cross stated that her senility had been characterized by episodes of hallucinations over the past two or three years. In addition, he recalled that Mrs. Slater had fallen and had been unable to get up on one or two occasions and that she had also suffered a stroke. Dr. Cross indicated that there was no way of determining when the episodes would occur, that the episodes would become worse in time, and that recently they had occurred every two to three months. Each episode lasts a week to ten days or more. Dr. Cross' opinion was that, during those episodes, she would be unable to function in her own home without assistance and that her judgment would also be affected with regard to her financial affairs. Since she was also being treated for a gastric ulcer, an irregular heartbeat and an underactive thyroid, all of which required her to take medication, her senility would become life-threatening if medication was not taken appropriately. It was Dr. Cross' opinion that she was in need of assistance in caring for both her physical needs and managing her financial resources.

The second witness called was Trenton police officer, Steve McCollum. It was his testimony that on January 5, 1987, he had been called to the Hy–Vee Grocery Store. Upon arriving there, he found Mrs. Slater to be very confused and scared. He was not able to make much sense of what she was saying except that she thought there were people in her home. Approximately one week earlier, on December 27, 1986, he had also been called to Mrs. Slater's home

with similar complaints by her. On neither occasion was anyone found in her home.

Betty Shirley, who had been a neighbor of Mrs. Slater for approximately five (5) years, testified next. She testified that about 2:00 a.m. on Sunday, January 4, 1987, Mrs. Slater appeared at Mrs. Shirley's door. She was dressed in a sweater with no head wrap on a cold night and had an overnight bag. Mrs. Slater told her neighbor there were strangers in her home playing cards and that she didn't know them. Her intent was apparently to walk to her son's home, a distance of over one (1) mile. She apparently felt one of the persons in her home playing cards was Dr. Cross.

Mildred Linhart, a local nursing home administrator, testified that Mrs. Slater has been a resident in her facility on two prior occasions—in September of 1985, and again in June and July of 1986. On both occasions, she spent a month to five weeks there following hospitalization. She reported that on both occasions she had been hospitalized because she had not been eating properly and had shown confusion. Mrs. Linhart's opinion was that, without supervision, Mrs. Slater would not have been capable of managing her personal needs or taking care of her affairs.

Next, Donald Slater testified. He stated that he sees his mother almost daily and has always talked to her once or twice a day. He testified that his mother owned her home and had approximately $125,-000.00 in various bank accounts and certificates of deposit. He further testified that over the past several months she had become subject to mood swings that would cause her to take up with someone for a few weeks and then become upset with them. Her mood swings had caused her to have various persons' names added to her various bank accounts from time to time. He has confirmed with banks and various others that she had specifically instructed them to have the names inserted on her accounts and even got copies from banks confirming that those had been her instructions. Donald testified that when he would discuss with his mother whether she had

these various names on the accounts, she would deny that it had occurred.

Finally, Mrs. Slater testified. While she exhibited knowledge that she owned her home and held certificates of deposit, she also exhibited considerable confusion with regard to powers of attorney which she had had drawn. At first her testimony was that she had never authorized anyone to draw upon a power of attorney for John McCullough or Jim Witten. Then, she recalled, after being shown a letter where she had instructed Attorney Jack Peace to revoke the power of attorney, that she did type the letter instructing Mr. Peace to have the power of attorney revoked, despite the fact that she did not recall who made out the power of attorney. Finally, she admitted that Mr. Pace had told her that he had been instructed by her to prepare the powers of attorney and that then she asked him to have them removed. When asked whether she remembered adding other names to the accounts at Trenton National Mercantile Bank, her testimony was that she didn't know why those other names were on the card and that she had never mentioned it to him.

At the conclusion of the evidence the Court appointed the public administrator as guardian and conservator. This appeal followed.

Appellant argues that the trial court failed to comply with § 475.075.9. This section requires the court make and recite in its order detailed findings of facts stating:

(1) the extent of physical and mental incapacity to care for his person;

(2) the extent of his physical and mental disability to manage his financial resources;

(3) whether or not he requires placement in a supervised living situation and if so, the degree of supervision needed; and

(4) whether or not his financial resources require supervision and if so, the nature and extent of supervision needed.

We agree. This is especially true as it relates to subsections (3) and (4).

At the conclusion of the evidence, the court made the following findings.

... The Court, after hearing the evidence, finds that Maude M. Slater, the alleged disabled and incapacitated person had adequate opportunity to consult with her appointed attorney, and the appointed attorney having advised the Court that he has visited with the client prior to the hearing; and the court being satisfied that there is good cause for the exercise of its jurisdiction, and the alleged Ward/Protectee has had due and legal notice of this proceedings, the facts are inquired into by the Court, and having heard the evidence adduced, the court finds that Maude M. Slater is domiciled and has property in Grundy County, Missouri, and the capacity of the respondent to receive and evaluate information or to communicate decisions is impaired to such an extent as to render her incapable of meeting all of her essential requirements for care, treatment, habilitation, support and maintenance, medical care and other physical health and welfare; and in managing her financial resources.

The Court further finds that the extent of physical and mental incapacity to care for her person requires supervision for her physical care and safety; and at this time the respondent is residing in her home; and the extent of her physical and mental disability to manage her financial resources is that she is unable to handle business or personal relations in her current mental state.

IT IS, THEREFORE, ORDERED AND ADJUDGED that Maude M. Slater is hereby declared to be an incapacitated/disabled person incapable of receiving and evaluating information and communicating decisions and is impaired to such an extent to render her incapable of meeting all of the essential requirements for food, clothing, shelter, safety or other care so that serious physical injury, illness or disease is likely to occur and/or that the respondent is unable to manage her financial resources....

With regard to the requirement that specific findings are to be made as to whether or not she requires placement in a supervised living situation, the court made no finding as the statute requires. As to the supervision of financial resources, the court failed to provide a detailed statement as to the nature and extent of supervision needed over appellant's financial resources.

As a consequence, this appeal is premature. While we believe the record supports the trial court's conclusion, we must dismiss this matter for lack of jurisdiction because of the failure to comply with § 475.075.9.

For the aforesaid reasons this case is dismissed.

All concur.