In the Matter of the CONSERVATOR-SHIP ESTATE OF Walter George MOEHLENPAH, an alleged disabled person.

Arlo E. MOEHLENPAH, Donn F. Moehlenpah, and Jocelyn M. Eastland, Petitioners–Respondents,

v.

Walter George MOEHLENPAH, Respondent–Appellant,

and

Virginia Moehlenpah, Petitioner–Appellant.

Nos. 53627, 53628 and 53893.

Missouri Court of Appeals, Eastern District, Division Three.

Nov. 22, 1988.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 20, 1988.

Application to Transfer Denied Feb. 14, 1989.

Mark Belz, Timothy Belz, Belz & Beck-emeier, St. Louis, for respondent Conservator Mercantile Bank.

Fred Roth, Clayton, for appellants Walter George and Virginia Moehlenpah.

Mary Colleen Sleater, Kirkwood (court appointed), for Walter George Moehlenpah.

SIMON, Judge.

This is a consolidated appeal from three orders entered by the Commissioner of the Probate Division of the Circuit Court and confirmed by the Probate Judge. Appellants, Walter George Moehlenpah (Walter) and his second wife, Virginia Moehlenpah (Virginia), represented by private counsel contend that the trial court erred in: (1) sustaining a motion to disqualify Walter's private counsel and denying various mo-tions filed by private counsel; (2) finding that Walter had effectively waived a jury trial; (3) admitting into evidence interroga-tories and answers of two physicians; (4) appointing a conservator ad litem; (5) di-recting the conservator ad litem to termi-nate Virginia's durable power of attorney; (6) finding Walter to be incapacitated and disabled; (7) entering summary findings that Walter "is an incapacitated and dis-abled person" and that he requires "com-plete supervision" of his living situation and financial resources; (8) appointing Mercantile Bank, rather than Virginia, con-servator of Walter's estate; and (9) accept-ing the conservator's designation of coun-sel. We affirm.

The proceedings began on June 29, 1987 when petitioners, Arlo Moehlenpah, Donn F. Moehlenpah, and Jocelyn M. Eastland, represented by attorney Mark Belz, filed a Petition for Appointment of a Conservator for their father, Walter George Moehlen-pah. Walter is 79 years of age. Petition-ers are the children of Walter's first mar-riage. The petition alleged that Walter is unable to receive or evaluate information or to communicate decisions regarding his estate, business matters, finances, and re-lated matters, and his estate is being wast-ed through mismanagement and use of funds and property in ways detrimental to Walter's best interests, and requested the appointment of Commerce Bank of St. Louis, N.A., as the conservator of the es-tate. The trial court appointed attorney Mary Sleater to represent Walter, and the matter was set for hearing on July 8, 1987. On July 2, 1987, Fred Roth entered his appearance as attorney for Walter, and filed a motion to discharge the court-ap-pointed attorney, a motion to dismiss the petition for appointment of conservator and for sanctions pursuant to § 514.205 RSMo (1986), and a request for a jury trial. (All further references shall be to RSMo (1986) unless otherwise noted). On July 8, 1987, Roth filed a motion to strike interroga-tories and answers of two physicians, who had examined Walter. Petitioners subse-quently moved to disqualify Roth as attor-ney for Walter, stating that Roth was em-

ployed to appear in this case by Walter's second wife, Virginia, who is not the mother of the petitioners, that Walter has been unable to request representation and has not communicated with Roth, and that representation of both Virginia and Walter by Roth constitutes a conflict of interest since Virginia's interests are contrary to Walter's.

At the hearing on July 8, 1987, the court considered petitioners' motion to disqualify Roth. The court asked appointed counsel Sleater to relate her opinion as to Walter's ability to exercise his choice of counsel based upon Sleater's previous meeting with Walter. Sleater stated that she had asked Walter several questions, such as whether he had children, what was the sum of one plus one, how many fingers she was holding, and how long he had lived in the family home, and she received no response. Walter whistled sporadically throughout the conversation. To the question, "Is one of your children's name Donn and Arlo and Jocelyn?" [sic], Walter cried. When asked if he had a dog, Walter replied, "Oh, yes," however, Virginia and Walter presently have no family pet. Based upon this meeting and her review of physicians' answers to interrogatories concurring that Walter could not communicate effectively, Sleater stated that she did not think Walter understood the nature of this action.

The court then exercised its right under § 475.075.4 to speak directly to Walter for the purpose of ascertaining his capacity to select private counsel. Roth promptly objected and asserted Walter's right to remain silent, which was overruled. The following occurred:

THE COURT: Good afternoon, Mr. Moehlenpah. How are you?

MR. MOEHLENPAH: All right.

THE COURT: How are you feeling?

MR. MOEHLENPAH: Oh,—

THE COURT: Can you tell me where you are this afternoon?

MR. MOEHLENPAH: I think about—consider it—that it's—Is that it, or what?

THE COURT: Do you know where you are? What is this room?

MR. MOEHLENPAH: (No response.)

THE COURT: Do you know—Do you know who I am, why I'm here?

MR. MOEHLENPAH: (No response.)

THE COURT: Can you answer me?

MR. MOEHLENPAH: (No response.)

THE COURT: Who is this gentlemen sitting next to you, right here?

MR. MOEHLENPAH: (No response.)

THE COURT: Can you tell me who this gentlemen is?

MR. MOEHLENPAH: Just—we're holding a case in court for—

THE COURT: All right. Do you know what day it is today?

MR. MOEHLENPAH: (No response.)

THE COURT: Is it Monday, Sunday, Friday?

MR. MOEHLENPAH: (No response.)

THE COURT: Do you know?

MR. MOEHLENPAH: (No response.)

THE COURT: Do you know what year it is?

MR. MOEHLENPAH: (No response.)

THE COURT: Can you hear me?

MR. MOEHLENPAH: (No response.)

THE COURT: Can you hear me talking to you?

MR. MOEHLENPAH: Yes, sir.

THE COURT: You can hear me?

MR. MOEHLENPAH: Yes, sir.

THE COURT: All right. What is your name? Can you tell me what your name is?

MR. MOEHLENPAH: (No response.)

THE COURT: Your first name?

MR. MOEHLENPAH: (No response.)

THE COURT: I don't want to upset you. Can you just tell me what your first name is?

MR. MOEHLENPAH: (No response.)

THE COURT: You can't tell me?

MR. MOEHLENPAH: (No response.)

THE COURT: Thank you.

The court concluded that, "Mr. Moehlenpah clearly does not have the capacity to select his own attorney; so I am going to rule today that you [Roth] not be permitted to act as his attorney in this matter and that Mary Sleater continue to represent him as court-appointed attorney." Although dis-

qualifying Roth from representing Walter, the court stated that Roth could still represent Virginia. The July 8, 1987 order disqualifying Roth also denied the various motions filed by Roth and is the subject of Appeal No. 53628.

Sleater, analyzing Walter's best interests, waived a jury trial believing Walter incapable of effectively communicating and participating in a trial before a jury. The court conducted its own examination as to the waiver:

THE COURT: Let me—Just so that we get this clear, I will ask Mr. Moehlenpah himself whether he wishes to waive his right to a jury trial as well. And so that I am sure there's no question, I will walk down and stand directly across from Mr. Moehlenpah.

Mr. Moehlenpah, can you hear me? Do you wish to waive your right to a trial by a jury?

MR. MOEHLENPAH: (No response.)

THE COURT: Do you understand what I'm asking you?

MR. MOEHLENPAH: (No response.)

THE COURT: Can you help me? You don't need to get up. You don't need to get up.

UNIDENTIFIED VOICE: Now, sit down.

THE COURT: Let the record show that he could not respond to the question.

MS. SLEATER: Your Honor, could we let the record reflect that he did apparently say "Uh-huh," or a "yes" answer to "Can you hear me"?

THE COURT: Yes, he did attempt to indicate that he did hear the question.

The court proceeded to try this matter without a jury.

Attorneys Belz and Sleater stipulated to the introduction of interrogatories and answers of physicians, James N. Heins, M.D. and Robert Schultz, M.D., into evidence at the hearing with all notice and cross-interrogatories waived. On behalf of the petitioners, Arlo E. Moehlenpah testified as to Walter's inability to carry on a conversation, to eat by himself, to distinguish "junk mail" from ordinary mail, and to read, and that he was under the care of several nurses. Donn F. Moehlenpah similarly testified as to Walter's inability to communicate. Petitioners rested, and attorney Sleater called Walter to the stand. Walter did not respond to most of the questions asked, but did reply, "Well, yes," when asked the second time if he was satisfied with Virginia's management of his money. When asked whether his children were in the courtroom, Walter replied, "No." The record indicates that all three of his children, Arlo E., Donn F., and Jocelyn M., were present.

The court recessed in order to permit Roth to file a petition for a writ or prepare a defense. Roth later filed a petition for a writ of prohibition to stay the proceedings on the petition for appointment of conservator. The writ petition was apparently denied. On July 31, 1987, petitioners filed a Motion for Appointment of a Conservator Ad Litem. The motion, in affidavit form executed by the petitioners, alleged that Virginia had: (1) removed funds from Walter's account(s) to purchase two condominiums in Florida for approximately $570,000 in her own name; (2) removed $500,000 from Walter's account(s) for an investment; (3) converted to her own use and disposed of a large portion of Walter's rental income, retirement benefits, etc.; (4) prepared a deed transferring Walter's residence, valued at $400,000, from his name alone into the joint names of Virginia and Walter; and other allegations as to future payments and transactions. In response to the motion for appointment of a conservator ad litem, Roth denied the allegations.

The court reconvened on August 3, 1987 to consider petitioners' motion. During the hearing, Roth admitted that $500,000 had been withdrawn from Walter's account by Virginia, pursuant to the durable power of attorney, and invested through POC Development Corporation in which Virginia has an investment interest. In return, Virginia gave Walter a twenty year, no interest note. In an order dated August 3, 1987, the court found an emergency to exist presenting a substantial risk that irreparable damage would occur to the property of Walter due to his failure and inability to protect his property. Robert C. Weis, Pub-

lic Administrator, was appointed conservator ad litem for a period of thirty days to take possession of, to collect, to protect, and to preserve all real and personal property of Walter pending a decision on the petition for appointment of a conservator for the estate. The court also authorized and ordered the conservator ad litem to immediately terminate a durable power of attorney by Walter appointing Virginia his attorney in fact. This August 3, 1987 order is the subject of Appeal No. 53627.

Proceedings resumed on October 1, 1987 on petitioners' request for appointment of a conservator of the estate. Donn F. Moehlenpah amended petitioners' original petition to request that his name be substituted for that of Commerce Bank as suggested conservator of the estate. Virginia likewise petitioned that she be appointed conservator of the estate and guardian of the person.

Petitioners were allowed to reopen their case. Several witnesses, including Henry H. Stern, testified. Stern stated that he had been Walter's attorney since October of 1982. He testified that documents had to be read to Walter, and that, with regard to certain business transactions, "it was clear that he couldn't act on his own behalf...." Based upon his knowledge of Walter's ability and financial affairs, Stern concluded that it would be in Walter's best interest for the court to appoint a conservator.

Petitioners called Virginia to testify. She testified that she had been married to Walter since January 7, 1983. It was her belief that Walter needed a conservator appointed. When asked about several finances concerning Walter's estate, Virginia revealed that Walter's name was on two loans used to purchase a Florida condominium in Virginia's sole name, and that she had transferred approximately $20,000 from a joint account with Walter into an operating account in her name for living expenses after the appointment of the conservator ad litem. Before cross-examining Virginia, Sleater, Walter's court-appointed attorney, stated, "Before I start my questioning; is it correct that all parties are agreeing here that Mr. Moehlenpah is disabled and incapacitated as those terms are used in the statute and needs the appointment of a guardian and conservator?" to which attorney Roth replied, "Yes."

On October 2, 1987, the probate court extended Robert C. Weis' appointment as conservator ad litem an additional thirty days or until the grant of letters, whichever came first. That same day, the court entered an order finding respondent, Walter, to be "an incapacitated and disabled person and, by reason of senility, is unable to receive and evaluate information or to communicate decisions to such an extent that respondent completely lacks capacity to meet essential requirements for food, clothing, shelter, safety or other care such that serious physical injury, illness, or disease is likely to occur and that respondent completely lacks ability to manage financial resources. Respondent requires placement in a living situation with complete supervision. Respondent's financial resources require complete supervision." Whereupon the court appointed Mercantile Bank, N.A., as conservator of the estate and Virginia as guardian of the person.

Mercantile Bank, N.A., designated Mark Belz and the law firm Belz & Beckemeier, P.C., as attorneys for the conservator. Virginia filed motions to disqualify Mercantile Bank, N.A., as conservator and Mark Belz as attorney for the conservator, stating that the hiring of Belz constituted a conflict of interest in that Belz continues to represent the petitioners and has promised future litigation regarding assets jointly held by Walter and Virginia. Virginia subsequently withdrew her motions to disqualify without prejudice. Appeal No. 53893 was taken from the order adjudicating Walter incapacitated and disabled and appointing a conservator of his estate and a guardian of his person.

Appeal Nos. 53627, 53628, and 53893 have been consolidated under Appeal No. 53627. Briefs were filed on behalf of Walter and Virginia as appellants by private counsel Fred Roth, on behalf of Walter as respondent by court-appointed attorney Mary Sleater, and on behalf of Mercantile

Bank, N.A., conservator of the estate, by attorney Mark Belz.

■ Before reaching appellants' points on appeal, we first address the motion to dismiss filed by court-appointed attorney Sleater on behalf of respondent Walter. The motion urges this court to dismiss the appeal because the trial court had discharged attorney Roth from representing Walter.

Even if Roth were properly discharged as Walter's private counsel, he may still represent Virginia who has standing to appeal pursuant to § 472.170.1 and § 472.160.1. § 472.170.1 provides in relevant part that:

> Appeals shall be allowed from the probate division of the circuit court to the appropriate appellate court in any case in which a final adjudication in an investigation of the mental condition of any person alleged to be disabled, incapacitated, or mentally ill has been made. The appeal may be made by the petitioner who applied for such adjudication, or by the person alleged to be disabled, incapacitated, or mentally ill, *or by any relative of such person,* or by any reputable citizen of the county in which the hearing occurred, or by an attorney for any of the foregoing persons.... (emphasis added).

Additionally, § 472.160.1 lists fourteen grounds upon which an aggrieved "interested person" may appeal an order, judgment, or decree of the probate division of the circuit court. Section 472.010(15) defines "interested persons" to mean "heirs, devisees, spouses, creditors *or any others having a property right or claim against the estate of a decedent being administered and includes children of a protectee who may have a property right or claim against or an interest in the estate of a protectee*...." Section 475.020 makes these provisions applicable to the provisions of chapter 475, the guardianship chapter of the probate code, providing: "The provisions of chapter 472, RSMo, unless therein restricted to decedents' estates, apply to guardianships and conservatorships...." The mo-

tion to dismiss the appeal is therefore denied.

The standard of review to be applied in this court-tried case is that "the decree or judgment of the trial court will be sustained by the appellate court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. Appellate courts should exercise the power to set aside a decree or judgment on the ground that it is 'against the weight of the evidence' with caution and with a firm belief that the decree or judgment is wrong." *Murphy v. Carron,* 536 S.W.2d 30, 32[1–3] (Mo. banc 1976). Weighing the evidence is for the trial court when it sits as fact finder, *Stratton v. Stratton,* 694 S.W.2d 510, 512[1, 2] (Mo.App.1985), and it may believe all, part or none of the testimony of any witness. *Estate of Graves,* 684 S.W.2d 925, 926[1] (Mo.App.1985).

■ In light of these principles, we consider appellants' first point, wherein they contend that the trial court erred on July 8, 1987 in finding Walter incapable of retaining private counsel, discharging private counsel Roth, and in denying various motions and a request for a jury trial filed by Roth. Specifically, appellants allege that: (a) there was no substantial evidence to find Walter incapable of retaining private counsel because: (i) Walter's silence in response to court questioning cannot be construed as evidence of incapacity, in light of § 475.075.8(5), providing that a respondent "shall have the [constitutional due process] right to remain silent," and (ii) apart from Walter's silence, the only evidence before the court was the unsworn opinion of the court-appointed attorney that Walter did not understand the nature of the proceedings; (b) there was no substantial evidence to disqualify Roth by reason of a conflict of interest, in that: (i) the only evidence before the court was the unsworn statement of petitioners' counsel as to the existence of a conflict, and (ii) appointed counsel did not investigate the matter and report the existence of a conflict as required by *In re Link,* 713 S.W.2d 487 (Mo. banc 1986); and

**256**

(c) even if sufficient evidence existed that Walter was incapable of choosing private counsel and that Roth was not free of outside influence, the court should have allowed Roth to serve as co-counsel or allowed the court-appointed counsel to serve as guardian ad litem.

■ At the outset, we note that appellants' notice of appeal from the order entered July 8, 1987 contests the "adjudication of incompetency". There was no adjudication of Walter's competency on July 8, 1987. The order merely discharged Roth and denied the various motions and the request for a jury trial filed by Roth. Despite this defect in their notice of appeal, appellants accurately argue the July 8, 1987 order in their brief. We also note that Roth, during oral argument, stated for the first time that he was hired to represent Walter by Virginia *acting through the durable power of attorney*. This durable power of attorney was never mentioned by Roth in his statements regarding the manner in which he was hired. Rather, Roth merely stated that he was contacted by Virginia to represent Walter. The durable power of attorney was not presented or discussed in the context of Roth's representation of Walter prior to his discharge by the court. It is a fundamental rule that contentions not put before the trial court will not be considered on appeal. An appellate court will not convict a trial court of error on an issue which was not put before it to decide. *Estate of Huskey v. Monroe*, 674 S.W.2d 205, 208[2, 3] (Mo.App.1984). Therefore, the existence of the durable power of attorney and what effect it had regarding Roth's employment will not be considered on appeal. Rather, we review appellants' first point on appeal in light of the record.

■ Section 475.075.3 provides for the appointment of an attorney to represent an alleged incapacitated and disabled person upon the filing of a petition seeking the appointment of a guardian or conservator. The court-appointed attorney is to visit with the client prior to hearing. If the client is able to understand the nature of the matter or to contribute to the advancement of his interests, the attorney must obtain all possible aid from the client. However, if the client's disability compels the attorney to make decisions for the client, the attorney must consider all circumstances then prevailing, and shall act with care to safeguard and advance the interests of the client. "The court-appointed attorney *may* be permitted to withdraw if the respondent employs private counsel who enters an appearance on behalf of said person." § 475.075.3 (emphasis added).

Our Supreme Court discussed the operation of § 475.075.3 in *In re Link*, 713 S.W. 2d 487 (Mo. banc 1986), stating:

Section 475.075.3 makes the substitution of private counsel for appointed counsel discretionary with the trial court. The legislature's decision to make the substitution discretionary reflects a recognition that, while an individual has a right to be represented by an attorney of her choice, an alleged incompetent may be susceptible to the influence of persons whose own self-interests are foremost in their minds. Accordingly, in exercising its discretion, the trial court should not order the withdrawal of appointed counsel upon the mere entry of appearance by private counsel. Instead, the trial court must satisfy itself that the alleged incompetent wishes to be represented by private counsel, and has the capacity to make such a choice. Alternatively, if the individual is incapable of articulating a choice, the court should be satisfied that private counsel is, and will continue to be free from outside influence. As with the waiver of substantial rights, in making such a determination the trial court is free to speak with the alleged incompetent, or request an examination by a physician or psychologist pursuant to § 475.075.4.

*Id.* at 497[15].

■ Appellants contend that this procedure of speaking with the alleged incapacitated person "cannot be utilized where the constitutional and statutory right to remain silent is asserted." We note that the right to remain silent was not asserted by Walter, but rather by private counsel

Roth, when the purpose of the trial court's questioning was to determine whether Walter possessed the capacity to employ private counsel.

While recognizing that examining an alleged incapacitated person requires the court to receive evidence that may also be pertinent to the ultimate issue of capacity, "it is a position trial courts traditionally occupy when making preliminary legal rulings in the course of litigation." *Id.* at 497[12]. Like our Supreme Court in *Link,* we "are confident that trial courts will recall the presumption of sanity prior to the ultimate adjudication of incompetency, *Cohen v. Crumpacker,* 586 S.W.2d 370, 376 (Mo.App.1979), and that incapacity for some purposes does not mean incapacity for all purposes." *Id.* at 497[12] n. 10 (citations omitted). Thus, the trial court's questioning of Walter did not violate his constitutional and statutory rights. His inability to respond to questions and his demeanor constituted substantive evidence supporting the trial court's order.

Further, before questioning Walter, court-appointed counsel Sleater reported to the court what had transpired during her pre-hearing meeting with Walter and her opinion as to Walter's ability to select private counsel. Sleater stated that Walter did not respond to most of her questions but whistled on and off throughout the conversation. He was unable to hold a pen properly and could not sign his name. Based on Walter's inability to communicate and her review of doctors' answers to interrogatories, Sleater opined that Walter did not understand the nature of the action.

Thus, the trial court was able to observe Walter, question him, and receive the report of court-appointed counsel. Therefore, we conclude that the trial court's finding as to Walter's capacity to retain private counsel has substantial evidentiary support.

■ Appellants also contend that there was no substantial evidence to support a finding that Walter's private attorney should be disqualified by reason of a conflict of interest because the only evidence before the court was the unsworn statement of petitioners' counsel as to the existence of a conflict, and appointed counsel did not investigate the matter and report to the court that there was a conflict as required by *Link.* "[I]f the individual is incapable of articulating a choice, the court should be satisfied that private counsel is, and will continue to be free from outside influence." *Link* at 497[15]. "A motion to disqualify is necessarily directed to the trial court's discretion." *State v. Puckett,* 691 S.W.2d 491, 494[7, 8] (Mo.App.1985).

Petitioners' verified motion to disqualify Roth was based upon the fact that Roth was employed by Virginia to enter his appearance for Walter, and that Virginia's interest in Walter's estate conflicted with Walter's interest. The original petition seeking appointment of conservator alleged that Walter's estate was "being wasted through mismanagement and use of funds and property in ways detrimental to respondent's [Walter] best interests." Further, Roth, himself, stated that he was contacted first by Virginia to represent Walter. He maintained that he represented both Virginia and Walter. In the motion to dismiss the petition for appointment of a conservator filed by Roth, it is requested that Virginia be appointed conservator if the trial court does not dismiss the petition. Virginia, as Walter's second wife, has a vested interest in the outcome of the conservatorship proceedings as it directly affects her control over Walter's finances. "A lawyer forced, or attempting, to serve masters with conflicting interests cannot give to either the loyalty each deserves." *State v. Crockett,* 419 S.W.2d 22, 29[14] (Mo.1967). Thus, in this factual situation, the trial court properly found that private counsel could not represent Walter's interest and Virginia's interest also.

Appellants alternatively contend that if the trial court had properly found Walter incapable of employing private counsel or that Roth was not free of outside influence, the court's disqualification of Roth was still improper in that § 475.075.3 contemplates allowing private counsel to serve as co-counsel or allowing appointed counsel to

serve as guardian ad litem. In support of this position, appellants cite *Link* stating:

> If, after receiving appointed counsel's report, the trial court continues to have doubts about private counsel's ability to represent his client's rights and interests, the court may require that appointed counsel continue service as co-counsel, or as a guardian ad litem.

*Id.* at 497–8[17].

Appellants state "in the event that the court is not satisfied that the respondent [Walter] will be adequately represented by private counsel, *Link* does not authorize the disqualification of the private attorney, but *requires* instead that appointed counsel not be permitted to withdraw." (emphasis added). This argument ignores the discretionary language of *Link* ("the court *may* require....") and that of § 475.075.3, "The court-appointed attorney *may* be permitted to withdraw if the respondent employs private counsel who enters an appearance on behalf of said person" (emphasis added). *Link* does not mandate maintaining the employment of private counsel, but rather, it allows the option of relegating private counsel to the status of co-counsel. The trial court's failure to exercise this option was not an abuse of discretion.

Based on the foregoing, we find that Roth was properly discharged as private counsel for Walter, and all motions, including the request for jury trial, filed by Roth acting for the benefit of Walter, were properly denied.

■ In their second point, appellants contend that the trial court erred in determining that Walter had effectively waived a jury trial, because the requirements of the due process clause of the Fourteenth Amendment and of § 475.075.8(2), as articulated in *Link*, were not met, in that: (a) there was no substantial evidence before the court to support a determination that Walter was incapable of making an intelligent waiver; and (b) even had there been sufficient evidence to support such a finding, appointed counsel did not demonstrate that a waiver of a jury trial would be in Walter's best interest.

Section 475.075.8 provides a "bill of rights" for respondents in incapacity or disability proceedings:

> The respondent shall have the following rights in addition to those elsewhere specified:
> (1) The right to be represented by an attorney;
> (2) The right to have a jury trial;
> (3) The right to present evidence in his behalf;
> (4) The right to cross-examine witnesses who testify against him;
> (5) The right to remain silent;
> (6) The right to have the hearing opened or closed to the public as he elects;
> (7) The right to a hearing conducted in accordance with the rules of evidence in civil proceedings, except as modified by this chapter;
> (8) The right to be present at the hearing.

This language was intended to bolster the affected individual's rights over previous Missouri law. *Link* at 494. Our Supreme Court noted that:

> This does not mean, however, that we believe that the legislature intended that the rights enumerated in § 475.075.8 cannot be waived. Such a construction would deprive an alleged incompetent of her essential right and authority to make decisions regarding trial strategy, and would thereby deny the individual a vital tool for advancing his or her best interest. Though we conclude that the legislature intended to bolster the affected individual's *rights*, we believe that it is equally true that the legislature did not intend that this must be done at the expense of the individual's best *interest*.

*Id.* at 494–5[1].

Section 475.075.3 strikes a balance between the alleged incapacitated person's rights and interests by requiring the court to appoint an attorney to represent the alleged incapacitated. The court-appointed attorney is required by the statute to meet with the client to assess the client's abilities to comprehend and aid in his or her defense. *Link*, 713 S.W.2d at 496[6].

"With regard to a client who cannot comprehend the nature of the action, § 475.075.3 requires that counsel make these fundamental decisions for the client." *Id.* at 496[10]. Counsel is to "safeguard and advance the interests of the client." § 475.075.3.

The *Link* court construed the above language to "authorize counsel to exercise or waive rights granted under § 475.075.8 on behalf of an incapacitated client, when such actions will advance the best interest of the individual." *Id.* at 496[10]. Once a waiver has occurred by the client or by virtue of counsel acting in the client's best interests, "the trial court is obliged to determine for itself whether the alleged incompetent in fact wishes to waive the right, and if so, whether the individual is capable of making a knowing and intelligent waiver, or alternatively, whether the individual is so disabled as to warrant counsel's acting in the individual's behalf." *Id.* at 496[11].

Here, court-appointed counsel Sleater waived Walter's right to a jury trial believing such waiver to be in Walter's best interests. Prior to the hearing, she stated:

For the record, Your Honor, in this hearing, Mr. Moehlenpah is present; however, by virtue of his mental condition and his ability to communicate, I don't believe that he understands the nature of this action, and I don't believe that he could effectively communicate and participate in a trial before a jury in this case. And, therefore, it's my decision, on my analysis of his best interest in this matter, that I'm going to waive his right to a jury trial.

At this point and in accordance with the requirement in *Link*, the court made its own determination whether Walter was capable of making a knowing and intelligent waiver, or whether Walter was so disabled as to warrant Sleater's acting on his behalf:

THE COURT: ... Let me—Just so that we get this clear, I will ask Mr. Moehlenpah himself whether he wishes to waive his right to a jury trial as well. And so that I am sure there's no ques-

tion, I will walk down and stand directly across from Mr. Moehlenpah.

Mr. Moehlenpah, can you hear me? Do you wish to waive your right to a trial by a jury?

MR. MOEHLENPAH: (No response.)

THE COURT: Do you understand what I'm asking you?

MR. MOEHLENPAH: (No response.)

THE COURT: Can you help me? You don't need to get up. You don't need to get up.

UNIDENTIFIED VOICE: Now, sit down.

THE COURT: Let the record show that he could not respond to the question.

MS. SLEATER: Your Honor, could we let the record reflect that he did apparently say "Uh-huh," or a "yes" answer to "Can you hear me?"

THE COURT: Yes, he did attempt to indicate that he did hear the question.

Based upon the foregoing, there was substantial evidence for the court to find Walter "so disabled as to warrant counsel's acting in [his] behalf." *Link* at 496[11]. A review of the record indicates that Sleater did demonstrate that waiver was in Walter's best interest by virtue of Walter's inability to communicate and to understand the nature of the hearing. The record does not reflect a memorandum reciting the waiver. The better practice is to evidence the waiver of fundamental rights in writing as in criminal proceedings. Based upon the record, we find no prejudice to Walter as a result of the waiver. Point denied.

In their third point, appellants allege that the trial court erred in receiving into evidence the interrogatories and answers of two physician deponents, the admissibility of which appointed counsel had stipulated, because the requirements of the due process clause and of § 475.075.8(4) relating to waiver of the right to cross-examine adverse witnesses, as articulated in *Link*, were not met in that: (a) there was no substantial evidence before the court to support a determination that Walter was incapable of making an intelligent waiver; and (b) even had there been sufficient evidence to support such a finding, appointed

counsel did not demonstrate that waiver of the right to cross-examine the physician deponents would be in Walter's best interest.

■ From its prior discussions with Walter relating to his capacity to select private counsel and his waiver of a jury trial, the court was warranted in finding Walter so disabled as to justify appointed counsel's acting in Walter's behalf. *See Link* at 496[11]. Sleater had previously referred to Walter's apparent inability to understand the nature of the hearing. Sleater had met with Walter as required by § 475.075.3. This meeting gave her a sense of Walter's ability and how she should proceed at trial. In addition, Sleater had discussed Walter's condition with the physician deponents. Based on the foregoing, she elected not to propound cross-interrogatories. A review of the record reveals substantial evidence under these factual circumstances to conclude that the waiver was in Walter's best interest. Appellants' contention is without merit.

■ In their fourth point, appellants contend that the trial court erred in appointing a conservator ad litem because: (a) notice was not served in person on Walter a reasonable time before the hearing as required by § 475.075.11; (b) there was no substantial evidence to support a finding that an emergency existed presenting a substantial risk of irreparable damage to Walter's property; and (c) the order appointing the conservator ad litem was not supported by specific findings as to the existence of an emergency or as to the risk of irreparable damage to Walter's property.

Appellants' argument that Walter was not served in person a reasonable time before the hearing was never presented to the trial court. Private counsel merely complained that he had not received the notice, which was left at his office, a reasonable time before the hearing. Contentions not put before the trial court will not be considered on appeal. In any event, all attorneys were noticed and were present,

and all parties were represented at the hearing. We find no prejudice.

■ Appellants' argument that there was no substantial evidence to support a finding that an emergency existed presenting a substantial risk of irreparable damage to Walter's property is also without merit. The trial court was aware of the evidence presented at the July 8, 1987 hearing, and additionally the August 3, 1987 hearing where it was revealed that Virginia had withdrawn $500,000 from Walter's account. We conclude that the trial court did not err in finding a substantial risk of irreparable damage to Walter's property.

■ Appellants also allege that the order appointing the conservator ad litem was not supported by specific findings as to the existence of an emergency or as to the risk of irreparable damage to Walter's property. In support of this proposition, appellants cite *Slater v. Slater,* 747 S.W.2d 248 (Mo.App.1988). *Slater* examined whether an order adjudicating a person to be incapacitated and disabled set forth proper detailed findings of fact as required by § 475.075.9. An order appointing a conservator ad litem falls under § 475.075.11, which has no requirement for detailed findings of fact. We find no error. Point denied.

■ In their fifth point, appellants allege that the trial court erred in directing the conservator ad litem to immediately terminate a durable power of attorney by Walter appointing Virginia his attorney in fact because there was no substantial evidence before the court to support a finding that termination would be in Walter's best interest, in that the only evidence before the court was the unsworn statement of counsel for petitioners to that effect.

Section 486.565 allows a conservator ad litem to terminate a durable power of attorney, and provides in part as follows:

If, following execution of a durable power of attorney, a court of the principal's domicile appoints a conservator, guardian of the estate, or other fiduciary charged with the management of all or a portion of the principal's property, the

attorney in fact is accountable to such fiduciary as well as to the principal. Upon authorization of the court appointing such fiduciary, the fiduciary has the same power the principal would have had if he were not disabled or incapacitated to revoke or amend the durable power of attorney....

Appellants suggest that, "at the very least ... an instruction to terminate a durable power should be premised on a finding that this would be in the best interest of the protectee." The July 8, 1987 and August 3, 1987 hearings provide substantial evidence to support the trial court's order terminating the durable power of attorney. We note that although the existence of a durable power of attorney was discussed prior to the order of its termination in the August 3, 1987 hearing, it was not presented in evidence until the October 1, 1987 hearing. Point denied.

■ In point six, appellants contend that the trial court erred in finding Walter incapacitated and disabled, because there was no substantial evidence before the court to support such a finding, in that: (a) the interrogatories to and answers of the physician deponents were improperly admitted over the objection of Walter's private attorney, in derogation of Walter's constitutional and statutory right to cross-examine adverse witnesses; (b) the testimony of Walter was improperly elicited over the objection of his private attorney, in derogation of his constitutional and statutory right to remain silent; and (c) apart from the improperly admitted interrogatories and answers and the improperly elicited testimony of Walter, the only evidence before the court was the unfounded opinion testimony of lay witnesses.

Petitioners have the burden of proving incapacity, partial incapacity, disability, or partial disability by clear and convincing evidence. § 475.075.7; *Cannon v. Muller*, 724 S.W.2d 321, 324[2] (Mo.App.1987). Appellants allege that it was improper for the trial court to admit the interrogatories and answers of the physician deponents.

The interrogatories and answers of James N. Heins, M.D., revealed that Wal-

ter "[d]emonstrated progressive chronic mental deterioration demonstrated by defective recent memory, inability to perform simple calculations, defective judgment, inability to follow simple commands...." Similarly, the interrogatories and answers of E. Robert Schultz, M.D. revealed that Walter "does not know the year, month, or date. He cannot follow simple directions. The patient has difficulty in feeding himself. He has lost control of his bowels and bladder. He walks with a slow shuffle with assistance. He cannot assist in dressing or bathing. Most of the time he cannot complete a total sentence." Both physicians believed that it would be in Walter's best interest to appoint someone to protect his person and to manage his property. As per our discussion in Point Three, it was not error to admit the interrogatories and answers of the two physician deponents.

■ Appellants' argument that Walter's testimony was improperly elicited over the objection of his private attorney in derogation of his constitutional and statutory right to remain silent is also without merit. As previously found in Point One, Roth was properly discharged as Walter's private counsel. Sleater elected to call Walter to the stand. Walter's testimony consisted of the following:

DIRECT EXAMINATION BY MS. SLEATER:

Q. Mr. Moehlenpah,—

THE COURT: I think it'll pick it up. It'll pick it up, yeah.

BY MS. SLEATER:

Q. Mr. Moehlenpah, I'd just like to ask you a few questions today. Okay. You've been sitting here a long time; haven't you?

A. (No response.)

Q. Well, we're just about ready to go back home. Please don't get upset, Mr. Moehlenpah.

A. (Inaudible.)

Q. Do you understand where you are, Mr. Moehlenpah?

A. Well, I—

Q. Can you tell me who this lady is sitting next to me, Mr. Moehlenpah?

A. (Inaudible.)

Q. Do you smoke?

UNIDENTIFIED VOICE: No. He won't allow people to smoke.

MS. SLEATER: All right.

UNIDENTIFIED VOICE: He had to kick me out of the house because I was smoking. That's what he's remembering.

BY MS. SLEATER:

Q. Mr. Moehlenpah. Mr. Moehlenpah, we're here today, Mr. Moehlenpah, on the issue of whether a conservator would be appointed to manage your funds for you. Do you understand what I'm saying?

A. Yeah. I guess I could get the—

Q. Has your wife been looking after your funds for you?

A. Oh, yes. Yeah.

Q. Are you happy with the way your wife is managing your money?

A. (Inaudible.)

Q. Are you satisfied with the way your wife has been managing your money?

A. Well, yes.

Q. Have you been able to discuss things with her concerning your funds?

A. (No response.)

Q. Mr. Moehlenpah, can you tell me where the Woodbine Center is?

A. (No response.)

Q. Do you know what the Woodbine Center is?

A. (No response.)

Q. Mr. Moehlenpah, have you been taking some vacations? Where do you go on vacation?

A. (No response.)

Q. Mr. Moehlenpah, can you tell me the names of your children?

A. (No response.)

Q. Are your children here in the room?

A. No.

Q. No, they aren't?

A. (No response.)

Q. Do you know how many kids—

A. (Inaudible.)

MS. SLEATER: No further questions, Your Honor.

THE COURT: Thank you.

Although Walter stated that his children were not in the courtroom the record indicates that the children were present.

If this were a criminal case, it probably would not have been wise to call upon your client, under these circumstances, to testify. However, this situation differs from a criminal case in that the basic thrust of proceedings under chapter 475 of the probate code is the best interests of the protectee rather than punishment. We are aware of the impact on an individual to be deprived of his right to control his property and his person, but chapter 475 provides guidelines to protect these interests and to insure that individual's rights are not abused. Appellants have failed to show how Walter has been prejudiced. His wife, Virginia, her attorney, Roth, Walter's former attorney, Stern, Dr. Schultz, Dr. Heins, and the petitioners all agree that Walter is in need of assistance. The disagreement centers primarily on the manner of providing the assistance. Reviewing the entire record, we conclude that the trial court did not abuse its discretion in permitting Walter to testify.

Appellants argue that apart from the improperly admitted interrogatories and answers of the physician deponents and the improperly elicited testimony of Walter, the only evidence before the court was the unfounded opinion testimony of lay witnesses. Our previous findings that the physicians' interrogatories and answers were properly admitted and that it was not erroneous for the trial court to permit Walter to testify makes review of this allegation unnecessary. A thorough review of Walter's testimony, the statements of the two physicians, and the testimony of the numerous lay witnesses reveals clear and convincing evidence to uphold the trial court's finding that Walter is incapacitated and disabled. The evidence surpasses that found acceptable in *Cannon v. Muller,* 724 S.W.2d 321, 324[2] (Mo.App.1987) in which an alleged incapacitated and disabled person's suicide threats and a physician's testi-

mony as to that person's psychological disorder constituted clear and convincing evidence. Point denied.

▬ Appellants' seventh point is that the trial court erred in entering summary findings that Walter "is an incapacitated and disabled person" and that he requires "complete supervision" of his living situation and financial resources, because these findings do not meet the requirement of § 475.075.9 that the court enter "detailed findings" as to these matters, in that the findings do not specify the nature and extent of Walter's alleged incapacity and disability and the degree of supervision allegedly required over Walter's living situation and financial resources.

Section 475.075.9 provides in relevant part that:

> ... if the court finds that the capacity of the respondent to receive and evaluate information or to communicate decisions is impaired to such an extent as to render him incapable of meeting some or all of his essential requirements for food, clothing, shelter, safety or other care so that serious physical injury, illness, or disease is likely to occur, or that the ability of the respondent to receive and evaluate information or to communicate decisions is impaired to such an extent so as to render him unable to manage some or all of his financial resources, it shall make and recite in its order detailed findings of fact stating:
>
> (1) The extent of his physical and mental incapacity to care for his person;
>
> (2) The extent of his physical and mental disability to manage his financial resources;
>
> (3) Whether or not he requires placement in a supervised living situation and, if so, the degree of supervision needed;
>
> (4) Whether or not his financial resources require supervision and, if so, the nature and extent of supervision needed.

Appellants rely on *Slater v. Slater,* 747 S.W.2d 248 (Mo.App.1988) in which Maude M. Slater appealed the appointment of a guardian and conservator on her behalf. Our brethren in the Western District dismissed the appeal as premature for failure to comply with the "detailed findings" of § 475.075.9. *Slater* is clearly distinguishable from the present case. In *Slater,* the court held that there were no findings as to parts 3 and 4 of § 475.075.9. *Id.* at 250. The pertinent part of the opinion read:

> The Court further finds that the extent of physical and mental incapacity to care for her person requires supervision for her physical care and safety; and at this time the respondent is residing in her home; and the extent of her physical and mental disability to manage her financial resources is that she is unable to handle business or personal relations in her current mental state.
>
> IT IS, THEREFORE, ORDERED AND ADJUDGED that Maude M. Salter is hereby declared to be an incapacitated/disabled person incapable of receiving and evaluating information and communicating decisions and is impaired to such an extent to render her incapable of meeting all of the essential requirements for food, clothing, shelter, safety or other care so that serious physical injury, illness or disease is likely to occur and/or that the respondent is unable to manage her financial resources....

Specifically, the court held that findings were not made as to whether or not Maude M. Slater required placement in a supervised living situation, nor as to the nature and extent of supervision needed over Maude M. Slater's financial resources. *Id.* at 251.

In the present case, however, the trial court entered the following order:

> The court having heard all evidence FINDS that respondent is an incapacitated and disabled person and, by reason of senility, is unable to receive and evaluate information or to communicate decisions to such an extent that respondent completely lacks capacity to meet essential requirements for food, clothing, shelter, safety or other care such that serious physical injury, illness, or disease is likely to occur and that respondent completely lacks ability to manage financial resources.

Respondent requires placement in a living situation with complete supervision. Respondent's financial resources require complete supervision.

The court AUTHORIZES the appointment of Virginia Moehlenpah as guardian of the person and Mercantile Bank N.A. as conservator of the estate without bond as authorized by law.

In contrast to the *Slater* order, the present order does contain the required findings. As to the extent of Walter's physical and mental incapacity to care for his person and disability to manage his financial resources, the court stated that Walter, by reason of senility *"completely* lacks capacity to meet essential requirements for food, clothing, shelter, safety or other care such that serious physical injury, illness, or disease is likely to occur and that respondent *completely* lacks ability to manage financial resources" (emphasis added). The nature of Walter's incapacity and disability is senility; the extent is complete. As to the requirement of whether or not he requires placement in a supervised living situation, and if so, the degree of supervision needed, the court stated that Walter "requires placement in a living situation with *complete* supervision" (emphasis added). As to whether or not his financial resources require supervision, and if so, the nature and extent of supervision needed, the court stated that Walter's "financial resources require *complete* supervision" (emphasis added).

Therefore, we conclude that the trial court's findings sufficiently complied with the statutory requirements of § 475.075.9. Point denied.

■ In their eighth point, appellants contend that the trial court erred in appointing Mercantile Bank, N.A., rather than Virginia, conservator of Walter's estate, because the appointment ignores the statutory preference for appointment of the disabled person's nominee, in that Walter had expressed his preference for the appointment of Virginia by designating her his attorney in fact in a durable power of attorney executed two years earlier.

In reviewing a decision on whom to appoint, "much must be left to the sound discretion of the trial judge confronted with the question, and appellate courts should defer to that discretion unless the ruling is against the circumstances, underlying policies, preferences of appointment, lack of substantial evidence or against the weight of the evidence to support the judgment." *Matter of Gollaher*, 724 S.W.2d 597, 600[1] (Mo.App.1986).

Section 475.050 provides:

Before appointing any other person, organization or corporation as guardian of an incapacitated person, or conservator of a disabled person, the court shall consider the suitability of appointing any of the following persons who appear to be willing to serve:

(1) If the incapacitated or disabled person is, at the time of the hearing, able to make and communicate a reasonable choice, any eligible person or, with respect to the estate only, any eligible organization or corporation nominated by him;

(2) Any eligible person or, with respect to the estate only, any eligible organization or corporation nominated in an instrument in writing signed by the incapacitated or disabled person, and by two witnesses who signed at his request, before the inception of his incapacity or disability, at a time within five years before the hearing when he was able to make and communicate a reasonable choice;

(3) The spouse, parents, adult children, adult brothers and sisters and other close adult relatives of the incapacitated or disabled person and any eligible person or, with respect to the estate only, any eligible organization or corporation, nominated in a duly probated will of such a spouse or relative executed within five years before the hearing.

Appellants argue that § 475.050(1) requires a court to give preference in selecting a conservator to the disabled person's nominee. Clearly, § 475.050(1) does not apply in this situation. Further, appellants, relying on *Matter of Crist*, 732 S.W.2d 587

(Mo.App.1987), argue that the reasonable choice was made two years ago by virtue of Walter's granting Virginia a durable power of attorney. *Matter of Crist*, relied on by appellants for the proposition that a durable power of attorney may be considered evidence focused on § 475.050(3) dealing with relatives rather than § 475.050(1) or (2). *Id.* at 590[3].

Section 475.050(3) requires the court to consider the suitability of blood relatives. *Brown v. Storz*, 710 S.W.2d 402, 405[1] (Mo.App.1986). "Although the specification of blood relatives indicates the legislature's intent to maintain a preference in their favor, that preference remains subject to the exceptions stated in *Roots*." *Id.* at 405[1]. In *Roots v. Reid*, 555 S.W.2d 54, 57[2] (Mo.App.1977), referred to by *Brown*, the court held that a relative should be appointed over a stranger unless the record "discloses dissension in the family, the adverse interest of the relatives and the incompetent, the lack of business ability of the relative, or any other reason whereby a stranger would best serve the interest of the incompetent." Here, the record discloses dissension in the family and the adverse interests of Virginia and Walter. The trial court's selection of Mercantile Bank, N.A. over Virginia was not erroneous. Point denied.

In their final point on appeal, appellants contend that the trial court erred in accepting the conservator's designation of counsel for petitioners as attorney for the estate, because his representation of the estate may be adversely affected by his conflicting responsibilities to petitioners, in that petitioners had announced their intention to pursue litigation to determine that assets titled jointly to Walter and Virginia or separately to Virginia are assets of the estate.

A review of the record reveals that appellant Virginia had filed a motion to disqualify counsel for conservator, Mercantile Bank, N.A. This motion was later withdrawn by appellant Virginia without prejudice.

Section 472.160 lists fourteen instances from which an appeal may be taken from an order of the probate division of the circuit court. Appellants' contention does not fall within any of these instances. No order was issued by the trial court from which an appeal may be taken. Their remedy is a motion to disqualify counsel filed in the probate division. Appellants' point is dismissed for lack of appealability. Although this point is not appealable, the trial court should immediately examine Belz's dual role as attorney for the conservator and attorney for the petitioners and make a determination as to Walter's best interest.

JUDGMENT AFFIRMED.

DOWD, P.J., and SIMEONE, Senior Judge, concur.