STATE of Missouri ex rel. Leonard SCOTT, Albert Cox, George Fogg, Gaston Couch, Harry Sanders, and James Jackson (Relators), Appellants,

v.

R. Elliot SCEARCE, Director of Personnel of the City of St. Louis; Harry L. Simmons, Walter C. Hauessler, and Mrs. Richard Hoffman, comprising the Civil Service Commission of the City of St. Louis, Respondents.

No. 29746.

St. Louis Court of Appeals.

Missouri.

June 4, 1957.

Motion for Rehearing or to Transfer to Supreme Court Denied July 1, 1957.

Rosenblum & Goldenhersh, Merle L. Silverstein, St. Louis, for appellant.

James V. Frank, City Counselor, Eugene P. Freeman, Thomas F. McGuire, Associate City Counselors, St. Louis, for respondent.

ANDERSON, Judge.

This is a proceeding in mandamus by relators against R. Elliot Scearce, Director of Personnel of the City of St. Louis, and Harry L. Simmons, Walter C. Hauessler, and Mrs. Richard Hoffman, members of the Civil Service Commission of said city. Relators, Leonard Scott, Albert Cox, George Fogg, Gaston Couch, Harry Sanders and James Jackson are employees of the city occupying positions in the classified service designated as Laborer I, Laborer II, Equipment Operator II, Equipment Operator III, and Refuse Collector. The object of the suit was to compel respondents to

perform the duties imposed upon them by Sections 9(k) and 7(b) (1) of Article XVIII of the Charter of the City of St. Louis in the manner provided by said sections. An alternative writ was issued by the Circuit Court commanding respondents either to comply with the provisions of said section of Article XVIII in the manner requested or to show cause why they should not do so. After service of the writ and prior to the return date thereof respondents filed a joint motion to dismiss. The grounds of said motion were that relators had failed to avail themselves of the proper administrative remedy provided by Section 7(d) of Article XVIII of said charter. This motion was thereafter sustained, the writ quashed, and relators' petition dismissed with prejudice. From this action of the court relators have appealed.

By Section 9(k) of Article XVIII of said charter there is imposed upon the Director the power and duty

"To devise and recommend to the commission a compensation plan consisting of scales of pay for the several grades or classes in due relation to each other and to rates prevailing for like employment in private industry, rules for the interpretation and application of the plan, and changes in such plan and rules from time to time as deemed desirable."

Section 7 of Article XVIII of said charter provides:

"The commission shall have power, and it shall be its duty:

\* \* \* \* \* \* \*

"(b) Ordinances.—To recommend to the mayor and aldermen in accordance with this article, ordinances to provide for:

"(1) a compensation plan providing properly related scales of pay for all grades of positions and rules for its interpretation and application."

The petition alleged that despite demands made by relators on respondents to perform the duties imposed by the foregoing sections of the charter, respondents have failed and refused to do so. The factual details with reference to the alleged failure of respondent Scearce to perform his duties are then set forth as follows:

"(a) Respondent Scearce has grossly and repeatedly failed and refused to ascertain and inform himself concerning the rates of pay prevailing in private industry for like employment as is rendered by relators, contrary to the form and mandate of said Section 9(k).

"(b) Respondent Scearce has consistently failed and refused, and still fails and refuses, to devise and recommend to said Civil Service Commission a plan for relators' compensation as members of the classified service which said rates of compensation are in due relation to rates prevailing for like employment to relators in private industry, but said respondent, wilfully overriding the consideration of the aforesaid relationship to private industry as decreed by said charter section and blaming his said remiss in said regard on the lack of funds provided by the Board of Aldermen, has first and arbitrarily designated other employees of said City in said classified service (namely craftsmen in the building trades, such as bricklayers, carpenters, hodcarriers, blacksmiths, electrical wiremen, plumbers, stagehands, and painters) to be compensated at rates prevailing for like employment in private industry and then has devised and recommended relators', among others, rates of pay based on the funds remaining and available for compensation to persons in the classified service, all to the prejudice of relators and contrary to the mandate of said Section 9(k)."

The factual details with reference to the alleged failure of the respondent members of the commission to perform their duties are set forth in the petition as follows:

"(1) Said respondents have attempted to disclaim and abdicate their responsibility and duty under said section to recommend such a compensation plan with properly related scales of pay under the guise that respondent Scearce is solely responsible for the establishment of said properly related pay plan which is recommended by respondent Scearce to said Civil Service Commission.

"(2) Said respondents have grossly and repeatedly failed and refused to ascertain and inform themselves concerning the rates of pay prevailing in private industry for like employment as is rendered by relators.

"(3) Said respondents have consistently failed and refused, and still fail and refuse, to recommend to said mayor and aldermen of said City of St. Louis a plan for relators' compensation as members of the classified service which said rates of compensation are in due relation to rates provided for like employment to relators in private industry, but said respondents, wilfully overriding the consideration of the aforesaid proper relationship to private industry as decreed by said Article XVIII and blaming their said remiss in said regard (if any) on the compensation plan recommended by respondent Scearce, have arbitrarily designated other employees of said City in said classified service (namely, craftsmen in the building trades, such as bricklayers, carpenters, hodcarriers, blacksmiths, electrical wiremen, plumbers, stagehands, and painters) to be compensated at rates prevailing for like employment in private industry and then have recommended relators', among others, rates of pay based on the funds remaining and available for persons in the classified service, all to the prejudice of relators."

It was then alleged that respondents' conduct in the respects detailed represented a discriminatory, arbitrary and oppressive exercise of their duties, contrary to the spirit and letter of said Article XVIII of said charter. The prayer of the petition was for a writ of mandamus ordering respondents to perform those duties imposed by Sections 9(k) and 7(b) (1) of Article XVIII of said charter, by devising and recommending a compensation plan "providing for properly related scales of pay for relators to like employment in private industry and command said respondents to cease and desist from their arbitrary and discriminatory conduct by recommending a compensation plan for relators having no regard for such proper relationship to private industry, but at the same time invoking such relationship for others of the classified service."

It will be seen that the gist of the action was to compel the performance by respondents of a positive duty enjoined upon them by the Civil Service Article of the City Charter, by devising and recommending a compensation plan, taking into consideration the pertinent factors specified in said Act as the necessary and proper guides to its preparation.

Section 7 of Article XVIII, relied upon by respondents as providing an administrative remedy which relators should have pursued, is as follows:

"Section 7. The commission shall have power, and it shall be its duty:

\* \* \* \* \* \*

"(d) Decisions.—To consider and determine any matter involved in the administration and enforcement of this article and the rules and ordinances adopted in accordance therewith that may be referred to it for decision by the director, or on appeal by any appointing authority, employee or taxpayer of the city, from any act of the

director or of any appointing authority. The decision of the commission in all such matters shall be final, subject, however, to any right of action under any law of the state or of the United States."

At the hearing below respondents introduced into evidence Sections 1 and 3 of the Commission's Rule XIII, enacted pursuant to the provisions of Chapter XVIII of said charter. Section 1 was a counterpart of Section 7(d) of Article XVIII, with subsections added dealing with disciplinary actions. Section 3 of said rule is as follows:

"Section 3. Other hearings.

"(a) Hearings on matters involved in the administration and enforcement of Article XVIII and these rules not involving disciplinary action, shall be held upon receipt in writing, within (10) days after the effective date of such action, of a request for such hearing, in which is set forth the point at issue and reasons for the request. (Amended February 24, 1947.)

"(b) Time limit: Such hearings shall be held as soon as feasible after receipt of such request, but in no case later than sixty (60) days thereafter."

The sole issue on this appeal is whether or not the trial court erred in sustaining the motion to dismiss on the ground that relators failed to pursue the administrative remedy available to them. Relators contend that they had no such remedy; that while an appeal to the commission from the director's failure to comply with the statute was available to them, no review of the acts or omissions of the commission itself is provided by the charter. Hence it is urged that no adequate and effective administrative remedy is available, since a joint refusal to comply with the charter provisions was alleged.

By Section 9(k) of Article XVIII of the charter, and Section 1 of Rule V of the commission's rules, it is the duty of the director, prior to the commission's recommendations to the Mayor and Board of Aldermen of a compensation plan, to prepare and submit for the commission's approval a compensation plan for the classified service according to the method specified in said section.

By Section 7(b) (1) of said charter provision, and Section 4 of Rule V of the commission's rules, it is the duty of the commission, upon receipt of the recommended compensation plan, or of proposed amendments thereto, after such revision as it deems necessary, to present such plan in the form of an ordinance to the Mayor and Board of Aldermen for their action.

It will thus be seen that under the law and rules of the commission, which have the force of law, the duty of initiating a compensation plan is upon the director. Section 7(d) of the charter invests the commission with the power to consider and determine any matter involved in the administration and enforcement of the Act on appeal from any act of the director. Clearly, said section grants to appellants a clear right to seek relief by appeal from the alleged discriminatory action and improper conduct of the director in the preparation of the compensation plan in question.

This brings us to the question as to whether an adequate administrative remedy existed with reference to the alleged improper acts of the commission in submitting to the Mayor and Board of Aldermen a compensation plan not in accordance with the requirements of Section 7(b) (1) of Article XVIII of the charter. In our opinion there was such remedy under Section 3 of Rule XIII, which provides for hearings upon matters involved in the administration and enforcement of Article XVIII upon receipt in writing of a request for such hearing, setting forth the point at issue and the reasons for said request. Relators did not avail themselves of this method of reviewing the acts of the commission.

In so far as an administrative body can be prevailed upon to correct its errors, resort to the courts becomes unnecessary. It is this consideration which has influenced the courts to require prior resort to the administrative body for modification of its decisions and regulations as a preliminary to judicial relief.

A case in point is Alexander v. State Personnel Board, 22 Cal.2d 198, 137 P.2d 433. That case was a mandamus proceeding to compel respondents to reinstate petitioners in their positions under the Civil Service from which it was alleged they were wrongfully discharged. Complaints charging incompetency and misconduct were filed with the board on July 12, 1938. A copy of the Board's findings, conclusions and decision was mailed to petitioners' counsel on April 8, 1939, and received two days later. The petition for the writ was filed July 5, 1939. No petition for rehearing was filed with the board until September 11, 1939, more than 30 days after service of the copy of the decision. The Supreme Court applied the rule that administrative remedies must be exhausted before redress may be had in the courts, and held that since the petitioners did not file a motion for rehearing within the time specified in the Act they had failed to exhaust their administrative remedy and were not entitled to the writ.

The Alexander case was followed in Clark v. State Personnel Board, 61 Cal.App. 2d 800, 144 P.2d 84, 86. There, petitioner sought correction of her civil service status which she alleged to be erroneous. Without filing a motion for rehearing before the board, petitioner brought her action in court. The court denied relief for the reason that petitioner had failed to exhaust an available administrative remedy. The court said:

"Here, as in the Alexander case, an opportunity for a rehearing was available to the petitioner, and in order to give the Board a chance to correct its mistake, if such it was, resort should first have been had to such agency. However, petitioner did not apply to the Board for a rehearing until many months after service upon her of the order denying her original petition, and the Superior Court was without jurisdiction to entertain her petition for writ of mandate. The enforcement of the rule requiring exhaustion of administrative remedies before resort to the courts is not a matter of judicial discretion but is a fundamental rule of procedure. The Civil Service Act does not expressly require that an application for rehearing be made a condition precedent to redress in the courts, neither does the act expressly designate a remedy in the courts. When, as here, the act provides for a rehearing and makes no provision for specific redress in the courts, the rule of the exhaustion of administrative remedies supplies such omission by requiring a rehearing as a condition precedent to an appeal to the courts. Alexander v. State Personnel Board, supra.

"The above case leaves no room for doubt that the exhaustion of the administrative remedy is prerequisite to a resort to the courts, even though, as in the present case, the provision for rehearing is permissive and not mandatory. Stated in another fashion this means that the courts recognize the obvious necessity of keeping such matters with the agency charged with the administration of the particular act in question and permitting that body to initially decide its myriad problems unhindered; for if it were otherwise, the complex and technical problems which should be solved by such government agencies might so burden the courts as seriously to impair the orderly disposition of their normal work."

The doctrine that one must exhaust his administrative remedies before resorting to the courts is firmly established in the law of this state. Brinkerhoff-Faris Trust & Sav.

Co. v. Hill, 323 Mo. 180, 19 S.W.2d 746; State ex rel. Merritt v. Gardner, 347 Mo. 569, 148 S.W.2d 780.

The above cited cases deal with purely administrative matters. In the case at bar the matter involved is the initiation by the director and the commission of the legislative process of fixing wages. In such cases the exhaustion doctrine is particularly desirable since there is, and should be, a reluctance on the part of the judiciary to interfere with the exercise of the legislative process.

As stated in the California cases, supra, the enforcement of the rule is not a matter for the court's discretion, but is a fundamental rule of judicial administration. To leave the application of the requirement in the realm of discretion would be to depart from the rationale of the exhaustion rule.

One final argument of the relators to justify their disregard of the administrative remedy may be noticed. They assert that said remedy is not an adequate and effective remedy because the commission had already decided the matter adversely to them. They assert that, under such circumstances, to seek a hearing before the commission would have been a futile and useless gesture. We cannot assume that consequence. Such a position is unsound in principle and unsupported by the authorities. To countenance such view would break down the rule of exhaustion of remedies. There is always the possibility that the action of the administrative board may render resort to the courts unnecessary, for it might correct the error complained of at a hearing under its rules. The exhaustion rule has been held to be applicable, even though the litigant may believe that his petition to the administrative agency will be denied and consequently his attempt would be futile. Alexander v. State Personnel Board, supra; Mallory Coal Co. v. National Bituminous Coal Commission, 69 App.D.C. 166, 99 F.2d 399; Red River Broadcasting Co., Inc., v. Federal Communications Commission (Baxter, Intervener), 69 App.D.C. 1, 98 F.2d 282.

The fact that the time for filing a request under Section 3 of Rule XIII has elapsed does not entitle relators to the writ. If a party has lost his remedy in due course of law through his own negligence he will not be entitled to a mandamus on the ground of inadequacy of the remedy at law. 55 C.J.S., Mandamus, § 114, page 187. In passing, however, it may be said that notwithstanding their failure to seek a review before the commission, relators are not at this time entirely without remedy. The development and recommendation of a compensation plan under the charter is quasi-legislative in character and essentially an exercise of rule-making power. Section 536.040 RSMo 1949, V.A.M.S., being a part of the administrative procedure and review act, provides that any person may petition an agency requesting the promulgation, amendment, or repeal of any rule. It would seem that relators might seek relief under this statute.

In our opinion the trial court did not err in sustaining respondents' motion to dismiss. The judgment is affirmed.

RUDDY, P. J., and MATTHES, J. concur.