STATE of Missouri, ex rel.
Lyle OWEN, Relator,

v.

The Honorable Peter H.
REA, Respondent.

No. 20825.

Missouri Court of Appeals,
Southern District,
Division Two.

July 2, 1996.

Motion for Rehearing or Transfer
Denied July 24, 1996.

Leland C. Bussell, Springfield, for Relator.

Bernard F. Weinand, Robert B. Langworthy, George D. Blackwood, Jr., Blackwood & Langworthy, L.C., Kansas City, for respondent.

## ORIGINAL PROCEEDING IN PROHIBITION

SHRUM, Judge.

### PRELIMINARY ORDER IN PROHIBITION MADE ABSOLUTE

Dr. Lyle Owen (Relator) seeks a writ of prohibition (or alternatively, a writ of mandamus) to disqualify Respondent, the Honorable Peter H. Rea, from proceeding in a pending case in the probate division of Taney County. The underlying case concerns whether Relator needs a guardian and conservator. On February 28, 1996, this court issued a preliminary order in prohibition.

Initially, this court must decide whether, under the circumstances, Respondent had authority to prevent Relator's private counsel from appearing as attorney of record in the probate case pending completion of court-appointed counsel's preliminary investigation, and also to strike a disqualification motion filed by such private counsel. This court answers no.

The other issue is whether the form and content of the motion to disqualify, filed pursuant to § 472.060,[1] was sufficient to mandate disqualification of the trial judge. This court answers yes. Consequently, we make the preliminary order of prohibition absolute.

We begin our consideration of the preliminary issue with the following principles in mind.

### RIGHTS OF AN ALLEGED INCOMPETENT TO A LAWYER

■ Generally, parties involved in litigation—civil cases as well as criminal—are entitled to be represented by a lawyer at all stages of the litigation. *Magerstadt v. La Forge,* 303 S.W.2d 130, 133 (Mo.1957). "It is a part of due process of law guaranteed by our constitution. Art. I, § 10, Constitution of Missouri, 1945." *Id.*

" 'The arbitrary refusal of any court . . . to hear a party by counsel employed by and appearing for him would be a denial of a hearing and in a constitutional sense a denial of due process. . . . The right of a party to be represented by a counsel of his own selection is a valuable one, the unwarranted denial of which is held to be a fundamental error.' "

*Id.* (citations omitted). In fact, ordinarily, litigants can hire as many lawyers to represent them as they see fit. *State ex rel. Snip v. Thatch,* 355 Mo. 75, 195 S.W.2d 106, 108 [6] (1946).

■ Since guardianship and conservatorship entail a deprivation of the fundamental liberty to go unimpeded about one's ordinary affairs, due process requirements apply to such actions. *In re Link,* 713 S.W.2d 487, 493–94 & n. 7 (Mo. banc 1986) (citing *Simon v. Craft,* 182 U.S. 427, 21 S.Ct. 836, 45 L.Ed. 1165 (1901)). When a state exercises its *parens patriae* power in an effort to protect the well-being of individuals who are not able to care for themselves, " 'it has the inescapable duty to vouchsafe due process.' " *Link,* 713 S.W.2d at 493–94 (quoting *Heryford v. Parker,* 396 F.2d 393 (10th Cir.1968)).

■ In Missouri, a "bill of rights" for respondents in competency or disability hearings is found at § 475.075.8. *Link,* 713 S.W.2d at 492; *Matter of Conserv. Estate of Moehlenpah,* 763 S.W.2d 249, 258 (Mo.App. 1988). The right to be represented by an

1. Statutory references are to RSMo 1994 unless    otherwise indicated.

attorney is among the rights guaranteed under this statute. § 475.075.8(1).

The *Link* court interpreted § 475.075 as a legislative effort to bolster the rights of an allegedly disabled or incapacitated person (which already included the right to be represented by an attorney), but not at the expense of the individual's best interest. 713 S.W.2d at 494–95. "Section 475.075 strikes a balance between the alleged incompetent's rights and interests by requiring the court to appoint an attorney to represent the alleged incompetent immediately upon the filing of the petition for appointment of a guardian." *Id.* at 496.

The requirement for appointed counsel in guardianship and conservatorship cases is found in § 475.075.3:

"3. Upon the filing of a petition [for appointment of a guardian or conservator for reasons other than minority] ... the court shall immediately appoint an attorney to represent the respondent in the proceeding. The attorney shall visit his client prior to the hearing. If the client is capable of understanding the matter in question or of contributing to the advancement of the client's interest, the attorney shall obtain from the client all possible aid. If the disability of a client compels the attorney to make decisions for the client, the attorney shall consider all circumstances then prevailing and act with care to safeguard and advance the interests of the client.... The court-appointed attorney may be permitted to withdraw if the respondent employs private counsel who enters an appearance on behalf of said person."

As part of its examination of the relationship between court-appointed counsel and private counsel in guardianship and conservatorship cases, the *Link* court declared that both counsel must engage in a preliminary evaluation of the allegedly infirm respondent, both must give equal respect to the client's wishes, and both must vigorously advance

the client's rights. *Id.* at 496–97. "Such behavior is required by the constitution, the statute, and the Rules of Professional Conduct." *Id.* at 497. Consequently, a trial court may exercise its discretion to disqualify private counsel if it is satisfied from the record presented that private counsel is not free of outside influence and indeed may be attempting to serve masters with conflicting interests. *Moehlenpah,* 763 S.W.2d at 257–58.

## FACTS

We turn now to the pertinent facts as revealed by this record. On October 3, 1995, Edgar Owen filed a petition in the probate division of the circuit court of Taney County, Missouri, seeking appointment of a guardian and conservator for his father, Dr. Lyle Owen (Relator). Attorney Rodney Daniels (Daniels) was designated the court-appointed attorney for Relator.

Relator hired attorney Jerry Redfern (Redfern) as his private counsel. Redfern filed an answer on behalf of Relator on October 24, 1995. Numerous other pleadings and motions were filed in the case by Redfern in the ensuing months.

A docket entry dated October 25, 1995, recites that a telephone conference occurred on that date involving Respondent, Daniels, Redfern, Monslow (Edgar Owen's attorney) and other lawyers.[2] After the conference call, Respondent issued several orders via docket entries, including this:

"3. Mr. Daniels shall continue to act for Dr. Owen & in a proper relationship with such counsel as may be employed by Dr. Owen."

The docket sheet reflects a flurry of activity after October 25, 1995, and until November 15, 1995. Amended pleadings were filed on behalf of Edgar Owen, Redfern filed additional pleadings and motions for Relator, and Daniels filed a "Motion for Instructions." On November 14, 1995, Respondent issued numerous orders and rulings, which included a

---

**2.** Other lawyers were involved at that time because, concurrently with the October 3, 1995, application for guardianship and conservatorship, an ancillary pleading was filed seeking injunctive relief on behalf of Relator and against the City of Branson. The main purpose was to enjoin Branson from contracting with Relator for the sale of land owned by him until his competency was adjudicated.

finding that Daniels' motion for instructions was "moot." The next day, Respondent made an additional docket entry:

"Mr. Daniels to complete the duties imposed by In re Link 713 S.W.2d 487 & Estate of Moehlenpah 763 S.W.2d 249. He shall be permitted a private meeting with the said Dr. Owen at Dr. Owen's home. Mr. Redfern shall facilitate this meeting with in Court instructions to his client. Peter Rea 11/15/95"

On January 12, 1996, in a writing characterized by Respondent as a "journal entry," he purported to rule on additional pending motions. As part of this "journal entry," Respondent wrote: "The request for trial setting is taken and held in abeyance to see progress [illegible] medical & 'Link' and 'Moehlenpah' determination. All parties ordered to enhance, permit, & cooperate w/ the private ct. appt. atty. to do 'Link' & 'Moehlenpah' duties." Another part of this instrument reads: "Ct. Appt. Atty. to have all & immediate access to any and all info in hand [illegible] private counsel."

A docket entry dated January 23, 1996, reads:

"The court has reviewed its January 12, 1996 'Journal Entry' and the Court is not willing to let stand any inference or finding of any wrong doing by private counsel & the objected to language in the 'Journal Entry' is softened & amended accordingly. The Court assumes that Mr. Daniels shall proceed to do his duty & the Court understands that there is no intention on the part of Mr. Redfern [or other members of his] firm to improperly impede the doing of that duty. The Court, however, is willing to hear evidence on any issue upon notice. Pete Rea."

Redfern filed a motion to withdraw as Relator's lawyer on January 22, 1996, stating that his "[f]irm has been rendered largely ineffective by the various rulings, orders, and proceedings herein." Redfern's motion recited that Relator had consented to his withdrawal as private counsel and was "currently seeking to retain other private counsel." On that same date, attorney Leland C. Bussell (Bussell) filed his entry of appearance for Relator.

On February 7, 1996, Respondent took Redfern's motion to withdraw "under advisement pending the report of Mr. Daniels." Also, he denied Bussell's request to appear as private counsel for Relator.

Relator's newly-hired private counsel, Bussell, filed a motion to disqualify Respondent on February 13, 1996. The motion, signed by Relator as well as Bussell, seeks Respondent's disqualification pursuant to § 472.060. Respondent ordered the disqualification motion "stricken from the files of this case" on February 23, 1996. In his order, Respondent recited that the motion was neither "properly filed [nor] timely filed."

Relator then filed his petition with this court, requesting that we prohibit Respondent from taking any further action in the guardianship/conservatorship case other than sustaining the request for a change of judge. We issued a preliminary order.

In his answer and suggestions in opposition to Relator's petition, Respondent (here represented by Edgar Owen's attorney) points out that when Bussell filed his entry of appearance on behalf of Relator, Redfern was still in the case as Relator's private attorney; moreover, Daniels had not completed his investigation or reported to the court as had been ordered. In a conclusory fashion, Respondent asserts that to allow substitution of private counsel in this case "would have impeded the investigation of the court appointed counsel[;]" hence he exercised sound discretion in refusing to recognize Bussell's entry of appearance.[3] With that as his premise, Respondent maintains that Bussell did not have standing to file the motion to disqualify; consequently, it was proper for Respondent to strike that motion from the record.

3. Respondent's assertion that allowing Bussell's appearance as Relator's private counsel would have impeded court appointed counsel's investigation is found only in Respondent's suggestions in opposition to Relator's petition. Respondent never develops the argument in his brief; indeed, it is never again mentioned by him. After reviewing the record, we understand why: nothing in the record supports that claim.

## DISCUSSION AND DECISION

*Rejection of Private Counsel's Entry of Appearance*

■ Respondent chiefly relies on two cases, *Link,* 713 S.W.2d 487, and *Moehlenpah,* 763 S.W.2d 249, to argue that his refusal to recognize Bussell's entry of appearance was proper. We conclude otherwise. *Link* and *Moehlenpah* contain many principles which guide the trial court in exercising its discretion concerning the substitution and withdrawal of private attorneys, but do not allow the trial court to deny an entry of appearance. We examine the two cases to clarify this distinction, but first, we must point out that Respondent never cites to us any authority which would even suggest that an attorney must obtain leave of court before entering an appearance for his client. Neither has our own research uncovered anything to suggest that a trial court must agree to an attorney's entry of appearance as a prerequisite to his being in the case. *Magerstadt,* 303 S.W.2d at 133 and *Snip,* 195 S.W.2d at 108[6] suggest otherwise.

■ *Link* states that "[§] 475.075.3 makes the *substitution* of private counsel for appointed counsel discretionary with the trial court." 713 S.W.2d at 497 (emphasis ours). Such language does not give the trial court the discretion to refuse the entry of appearance of private counsel when that entry of appearance does not seek to replace appointed counsel. *Link* goes on to say that "in exercising its discretion, the trial court should not order the withdrawal of appointed counsel upon the mere entry of appearance by private counsel." *Id.* Again, the grant of discretion pertains to withdrawal or substitution of the appointed counsel, not the entry of appearance by private counsel. *Link* makes it clear that where the alleged incompetent seeks to be represented by private counsel in lieu of appointed counsel, the court must "satisfy itself that the alleged incompetent wishes to be represented by private counsel, and has the capacity to make such a choice" or in the alternative, "if the individual is incapable of articulating a choice, the court should be satisfied that private counsel is, and will continue to be free from outside influence." *Id.* None of the trial court discretion or investigatory duties recognized in *Link* allow the court to deny the entry of appearance of private counsel where that entry does not seek to remove appointed counsel.

■ *Moehlenpah* illustrates the proper exercise of a trial court's investigatory duties in relation to the retention of private counsel. If, after an entry of appearance by private counsel, the court determines that the alleged incompetent is incapable of employing private counsel or that private counsel was not free of outside influence, the court may either "relegate private counsel to the status of co-counsel" or discharge the private counsel. *Moehlenpah,* 763 S.W.2d at 257–58. Again, *Moehlenpah* is not authority for the proposition that the trial court may refuse to recognize an entry of appearance by privately retained counsel. Moreover, nothing in the record indicates that Respondent made either of the two findings necessary to support discharging Bussell. Nothing in the record indicates that Respondent determined that Relator was incapable of employing Redfern or any other private counsel.[4] To the contrary, Respondent not only allowed Relator to retain Redfern as co-counsel to Daniels and actively participate in the ongoing litigation, but later refused to permit him to withdraw. Furthermore, a thorough search of the record reveals nothing that would indicate that Bussell was not free of outside influence.

Respondent also places much significance on the fact that Daniels had not completed his duty to investigate the Relator's condition or potential conflicts of interest of private counsel when Bussell entered his appearance. This fact has no bearing on the question of whether the court could deny Bussell's entry of appearance. The court has the discretion to discharge private counsel if the investiga-

---

4. In pleadings filed by Edgar Owen in the ancillary proceeding involving the City of Branson, he concedes that Relator's alleged incapacity was less than that of the incompetent in *Moehlenpah.*

Specifically, Edgar Owen acknowledged that "[t]here is no allegation in this case that Mr. Lyle Owen will not, or cannot, respond to direct questions."

tion reveals a conflict of interest, but not the discretion to deny the entry of appearance.

As Respondent states, the court has a "heavy responsibility" to "review the circumstances under which private counsel was retained and to ensure that the private counsel is free from outside influences." We agree with that statement, but do not agree with Respondent that this "heavy responsibility" justified the arbitrary denial of Bussell's entry of appearance. Respondent placed the cart before the horse, and in so doing erred and exceeded his authority in refusing to recognize Bussell's entry of appearance. We conclude that Respondent's order which purported to preclude Bussell from appearing as counsel of record for Relator was a nullity.

■ It is equally clear that the Respondent was without authority to infringe or restrict the lawful function of Bussell, as Relator's private counsel, by striking the motion to disqualify filed on behalf of Relator. As explained in *Magerstadt:*

" 'In the conduct of his client's cause, the right of counsel, within the law, to determine questions of trial tactics, or policy or strategy is one the courts must not infringe. If the day should come when such right cannot be thus exercised courts of justice will no longer "be open to every person." ' "

303 S.W.2d at 134 (citing *Mavrakos v. Mavrakos Candy Co.,* 359 Mo. 649, 223 S.W.2d 383, 388[11] (1949)). Once Bussell entered his appearance, he was entitled to conduct the litigation according to law. *Id.* This included the right to file a motion to disqualify pursuant to § 472.060. *See State ex rel. Campbell v. Kohn,* 606 S.W.2d 399 (Mo.App. 1980). Respondent exceeded his authority when he purportedly struck from the record the Relator's motion to disqualify Respondent.

### Sufficiency of Motion to Disqualify: Form of Affidavit and Content

Respondent's challenge to the sufficiency of the form and content of relator's motion to disqualify Respondent under § 472.060, is raised for the first time in his brief.

■ Respondent argues first that the motion did not comply with the statute because it was not verified by affidavit. Indeed, § 472.060 provides for the disqualification of a judge of probate on various grounds when "any party in interest objects in writing, verified by affidavit."

In this case, Relator signed the motion, and his signature was followed by the certification of a notary which stated that Relator,

"being of lawful age and duly sworn did state that the facts contained in the foregoing Motion for Disqualification of Judge are true and correct to the best of his knowledge and information.

"IN TESTIMONY WHEREOF, I have hereunto set my hand an [sic] affixed my official seal in Branson, Taney County, Missouri, on [February 13, 1996]."

At first blush, such a recital, accompanying the petition, might not appear to be sufficient to constitute a verified affidavit within the meaning of § 472.060. However, a recent decision of this court makes it clear that taken together, they are sufficient. In *State ex rel. York v. Kays,* 916 S.W.2d 859 (Mo. App.1996), this court also considered a petition for disqualification of a probate judge, signed by the relator, followed by a similar recital from a notary public. As we said:

"Although Relator did not sign again following that recital, the petition and affidavit were sufficient. 'A signed statement of facts, purporting to be the statement of the signer, followed by the certificate of an officer, authorized to administer an oath that it was sworn to and subscribed before him, is a lawful affidavit.' "

*Id.* at 861 (citations omitted). In fact, beyond those bare essentials, no particular form is required. *Id.* Therefore, Relator's motion did comply with § 472.060's requirement that the party seeking disqualification of a probate judge object in writing, verified by affidavit.

■ Second, Respondent contends that Relator's motion did not provide a legitimate basis for disqualification. Respondent then proceeds to attack the proof supporting the three categories of factual allegations which Relator cited as instances of Respondent's bias. That effort is futile, since "[a]lleging bias and prejudice, in the language of the statute or rule, is sufficient." *Kays,* 916 S.W.2d at 861[2]. Relator's motion stated that "the Honorable Peter H. Rea is interest-

ed, biased and prejudiced against [Relator]." Relator's motion was sufficient despite Respondent's arguments to the contrary.

Given that the timeliness of Relator's motion is undisputed and that we have found the form to be sufficient, the application for disqualification was proper. Consequently, Respondent should have disqualified himself. *Campbell*, 606 S.W.2d at 401–403. " 'Prohibition is an independent proceeding to correct or prevent judicial proceedings that lack jurisdiction.' " *State ex rel. Cardinal Realty Services, Inc. v. Schoeberl*, 915 S.W.2d 340, 341 (Mo.App.1996) (quoting *State ex rel. Raack v. Kohn*, 720 S.W.2d 941, 943[1] (Mo. banc 1986)). "A trial judge lacks jurisdiction and prohibition lies if the judge fails to disqualify himself upon proper application for disqualification." *Cardinal Realty*, 915 S.W.2d at 341 (citing *Raack* at 943[2] ).

Having concluded that Respondent should have disqualified himself, the preliminary order is made absolute and Respondent is directed to take no further action in this matter other than to sustain the petition for disqualification.

MONTGOMERY, C.J., and PARRISH, J., concur.